IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GRAPE TECHNOLOGY GROUP, INC., and KGB USA, INC., | ) ) ) |
| Plaintiffs, | ) ) ) C.A. No. 08-408 (GMS) |
| v. | ) ) |
| JINGLE NETWORKS, INC., | ) ) |
| Defendant. | ) |

**PLAINTIFFS GRAPE TECHNOLOGY GROUP, INC.'S AND KGB USA, INC.'S OPENING BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR A NEW <u>TRIAL UNDER FED. R. CIV. P. 59</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Nicholas Groombridge
Michael Eisenberg
Alfredo A. Perez de Alejo
WEIL, GOTSHAL
   & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

January 28, 2011

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ....................................................................................................... 1
II. ARGUMENT .............................................................................................................. 1
    A. The Only Issue In Dispute At Trial Was Whether Jingle's Accused Service Orders Listed Businesses "As A Function Of . . . Payment" ........ 2
    B. Grape Presented Overwhelming Evidence That Jingle's Accused Service Orders Businesses As A Function Of Payment ........................... 5
    C. Jingle Failed To Present Competent Evidence To Rebut Grape's Evidence Of Infringement ...................................................................... 7
III. CONCLUSION ......................................................................................................... 10

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Amgen Inc. v. F. Hoffman-La Roche Ltd.*,
    580 F.3d 1340 (Fed. Cir. 2009)..................................................................................1

*Enzo Biochem, Inc. v. Applera Corp.*,
    599 F.3d 1325 (Fed. Cir. 2010) ................................................................................10

*Linear Tech. Corp. v. Monolithic Power Sys., Inc.*,
    Case No. 06-476 GMS, 2009 WL 3805567 (D. Del. Nov. 12, 2009).................................1, 2

*Solvay S.A. v. Honeywell Int'l, Inc.*,
    622 F.3d 1367 (Fed. Cir. 2010)..................................................................................8

*Williamson v. Consol. Rail Corp.*,
    926 F.2d 1344 (3d Cir. 1991)....................................................................................1

## FEDERAL RULES

Fed. R. Civ. P. 59..........................................................................................................1

## I. INTRODUCTION

Plaintiffs Grape Technology Group, Inc. ("Grape Tech.") and kgb USA, Inc. ("kgb USA") (collectively "Grape") presented overwhelming evidence that Jingle Network, Inc.'s ("Jingle") accused category search service infringes the asserted claims of U.S. Patent No. 6,775,371 ("the '371 patent"). Against the weight of the evidence, the jury returned a verdict of non-infringement. Accordingly, pursuant to Rule 59 of the Federal Rules of Civil Procedure, Grape respectfully moves for a new trial on the issue of infringement of the '371 patent. *See* Fed. R. Civ. P. 59.

## II. ARGUMENT

Under Rule 59 of the Federal Rules of Civil Procedure, a court may grant a new trial "for any of the reasons for which a new trial has heretofore been granted in an action at law in federal court." *See* Fed. R. Civ. P. 59(a)(1)(A). Regional circuit law governs grants of new trials. *See Amgen Inc. v. F. Hoffman-LA Roche Ltd.*, 580 F.3d 1340, 1368 (Fed. Cir. 2009) ("We review decisions on motions for a new trial under the law of the regional circuit"). Under Third Circuit law, a new trial may be granted in a jury case when "the verdict was against the weight of the evidence . . . [and] a miscarriage of justice would result if the verdict were to stand." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991). "In making this determination, the trial judge should consider the overall setting of the trial, the character of the evidence, and the complexity or simplicity of the legal principles which the jury had to apply to the facts." *Linear Tech. Corp. v. Monolithic Power Sys., Inc.*, C.A. No. 06-476 GMS, 2009 WL 3805567, at *2 (D. Del. Nov. 12, 2009) (*citing Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 89 (3d Cir. 1960)). "Unlike the standard for determining judgment as a matter of law, the court need not

view the evidence in the light most favorable to the verdict winner." *Linear Tech. Corp.*, 2009 WL 3805567, at *2 (*citing Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980)).

A. **The Only Issue In Dispute At Trial Was Whether Jingle's Accused Service Orders Listed Businesses "As A Function Of . . . Payment"**

The sole disputed issue at trial concerning infringement of the '371 patent centered around the scope of the third limitation of claim 4. Jingle argued that this limitation, which recites, "obtaining a list of selected businesses . . . ordered as a function of at least payment from the businesses identified by a search to the directory assistance provider," requires each business on the list to pay before being listed. Jingle characterized this as the "paid for listing" requirement. As discussed below, there was no such requirement.

There were no other disputed issues relating to infringement of the '371 patent at trial. Grape presented uncontroverted evidence that Jingle's accused service performs every other limitation of claims 4, 5, 7, and 8. Grape also presented uncontroverted evidence concerning the relevant functionality of Jingle's accused service. Each is discussed in turn.

Claim 4, from which claims 5, 7, and 8 depend, recites:

A method for providing a directory assistance service by a directory assistance provider comprising:

[a] receiving a directory assistance call from a caller, the call including a request for suggestions of businesses which provide a desired product or service;

[b] searching a database;

[c] obtaining a list of selected businesses responsive to the request, wherein the selected businesses are ordered as a function of at least <u>compensation given to the directory assistance provider by the selected businesses</u>;

[d] and suggesting at least one of the selected businesses to the caller.

'371 Patent, Cl. 4. The parties agreed that the term "<u>compensation given</u> to the directory assistance provider by the selected businesses" means "<u>payment from</u> the businesses identified by a search to the directory assistance provider." D.I. 172 at 20 (emphasis added).

As set out in the statement of undisputed facts, Jingle conceded that its accused service performs the preamble and first and second limitations of claim 4. *See* D.I. 179 at 2. Grape's uncontroverted evidence further showed that Jingle's accused system performs part of the third and all of the last limitation of claim 4, as well as the other limitations of each asserted dependent claims. For example, Grape's infringement expert, Mr. G. Hunter Jones, testified that Jingle's system "suggests at least one [business] and in most cases it would suggest from the list. It would read off a few, in groups of five if there are lots of them." *See* Dec. 3, 2010, Trial Tr. at 334:4-13.

At trial Jingle did not dispute that its accused service performs part of limitation 3, limitation 4, and the limitations of dependent claims 5, 7, and 8.[1] *See* Dec. 7, 2010, Trial Tr. at 786:6-787:7 ("Really what matters next is wherein the selected businesses are ordered as a function of at least compensation given to the directory assistance provider by the selected businesses. I think that is important because that is where the disagreement is."). Indeed, Dr. Roch Guerin, Jingle's non-infringement expert, illustrated this point in the following demonstrative used in his direct examination.

---

[1] Jingle's non-infringement position with regard to dependent claim 5, 7, and 8 was solely based on its assertion that Jingle's accused service does not perform limitation 3 of independent claim 4. Dr. Guerin, Jingle's non-infringement expert, testified that "because they depend on Claim 4, and we do not, the Jingle system does not infringe Claim 4, these, by, you now, by policy point, will not be infringing, literally infringing." *See* Dec. 7, 2010, Trial Tr. at 795:11-25.

3

### Claim 4 of the "Paid for Listing" Patent

| |
|---|
| 4. A method for providing a directory assistance service by a directory assistance provider comprising: |
| receiving a directory assistance call from a caller, the call including a request for suggestions of businesses which provide a desired product or service; |
| searching a database; |
| obtaining a list of ~~selected businesses responsive to the request, wherein the selected businesses are ordered as a function of at least compensation given to the directory assistance provider by the selected businesses~~; and |
| suggesting at least one of the selected businesses to the caller. |

The sole limitation at issue was "wherein the selected businesses are ordered as a function of at least [payment from the businesses identified by a search to the directory assistance provider]."

There was also no dispute concerning the functionality of the relevant features of Jingle's accused service. As Mr. Jones explained, Jingle's service generates a list of advertisers – businesses that pay Jingle for a valid connection. *See* Dec. 3, 2010, Trial Tr. at 330:9-332:15. Jingle's service then orders the list based on the amount each business will pay Jingle for a valid connection. *See id.* at 330:18-331:3. Jingle's service also generates a list of non-advertisers, i.e., non-paying businesses. *See id.* at 331:4-11. The service then combines the lists of advertisers and non-advertisers, and inserts the non-advertisers after the advertisers. *See id* at 331:12-333:11. In other words, businesses that pay Jingle for a valid connection are listed before businesses that do not. Actual payment to Jingle occurs after a valid connection is made. *See id.* at 333:2-334:3.

4

Jingle did not dispute Mr. Jones' characterization of the accused service's operation.[2] Indeed, Dr. Guerin's testimony was consistent with Mr. Jones' explanation. Dr. Guerin explained that Jingle orders its business list so as to prioritize advertisers that are willing to pay Jingle more money for a connection. *See* Dec. 7, 2010, Trial Tr. at 792:8-13 ("The fact that Jingle could be making <u>more money</u> if, say, Pizza Pro gets connected because it's a <u>two dollar versus a lower amount</u>, than the other one, then Pizza Pro would typically be <u>higher up in the order of the list</u>.") (emphasis added). Dr. Guerin further explained that after a valid connection occurs, Jingle will generate an invoice to the advertiser, who in turn pays Jingle. *See id.* at 793:21-794:7 ("there is a record that gets generated that say, yep, we connected this particular call to Grotto Pizza, and that is where it gets passed to the billing system, and the billing system generates an invoice.").

### B. Grape Presented Overwhelming Evidence That Jingle's Accused Service Orders Businesses As A Function Of Payment

The third limitation of claim 3, as construed, recites "obtaining a list of selected businesses responsive to the request, wherein the selected businesses are ordered as a <u>function of at least payment</u> from the businesses identified by a search to the directory assistance provider." Grape presented overwhelming evidence that Jingle's accused service performs this limitation. For example, Mr. Jones testified that Jingle's accused service orders businesses based on "the amount that they would make if they used this ad and it's successful. So [Jingle] puts the highest value one at the top of this list." *See* Dec. 3, 2010, Trial Tr. at 331:14-16. Mr. Jones used the following demonstrative to illustrate this point:

---

[2] Dr. Guerin, the only witness to offer an opinion on non-infringement, focused his rebuttal testimony on the meaning of the term "compensation given to the directory assistance provider by the selected businesses."



Dr. Guerin corroborated Mr. Jones testimony. As discussed above, Dr. Guerin testified that Jingle's service lists businesses based on how much each business will pay Jingle for a valid connection. *See* Dec. 7, 2010, Trial Tr. at 791:8-13. This point is illustrated in the following demonstrative, which was prepared by Dr. Guerin and presented to the jury.

6



As shown above, Jingle's accused service places Pizza Pro ahead of all other businesses because Pizza Pro will <u>pay Jingle the largest amount</u>. *See* Dec. 7, 2010, Trial Tr. at 791:8-13. Moreover, Jingle's accused service orders the advertisers – Grotto Pizza, Ciao's, Pete's Pizza, and Paris Pizza – based on how much each advertiser will <u>pay Jingle</u> for a valid connection. The paying advertisers are ordered ahead of the non-advertisers, businesses that pay Jingle $0.[3] *See id.* at 791:1-793:5.

### C. Jingle Failed To Present Competent Evidence To Rebut Grape's Evidence Of Infringement

Jingle did not dispute Grape's characterization of how Jingle's accused service works. Instead, the only disputed issue concerning infringement of the '371 patent related to the scope of the third limitation of claim 4. Jingle argued that this limitation, which recites, "obtaining a list of selected businesses . . . ordered as a function of at least payment from the

---

[3] As Dr. Guerin explained, in reference to this demonstrative, "If there is lots of them [responsive businesses], [Jingle's service] is not going to return all of them. It typically does that in groups. So here is a group of five." Dec. 7, 2010, Trial Tr. at 792:3-5.

7

businesses identified by a search to the directory assistance provider," requires each business on the list to pay before being listed.

Jingle relied on Dr. Guerin's testimony to support its position. Dr. Guerin testified that the "plain meaning" of "compensation given," as recited in limitation 3 of claim 4, is "paid in advance to be listed." *See id.* at 787. He further opined that his own understanding of the claim limitation required businesses to pay before being listed:

> if you read it, it is just the plain meaning of all the words in that particular sentence. You have compensation, which was agreed by the parties to mean payment. So you have payment given. So payment has been made by the selected businesses, to the directory assistance provider.
>
> So again, my perception is nothing really fancy at work here. It means a set of businesses that you have paid in advance to be listed by the information assistance provider.

Dec. 7, 2010, Trial Tr. at 787:10-18 (emphasis added).

This testimony was flawed for at least two reasons. First, Dr. Guerin's testimony was factually inaccurate. The parties did not agree that "compensation" means "payment." Instead, the term "compensation given to the directory assistance provider by the selected businesses" was construed to mean "payment from the businesses identified by a search to the directory assistance provider." D.I. 172 at 20. Second, and more important, Dr. Guerin's testimony was irrelevant to the extent it was based on his own opinion of the plain and ordinary meaning of "compensation given." A construction for the term compensation given had already been decided by agreement of the parties. Thus, Dr. Guerin's testimony regarding the plain and ordinary meaning of "compensation given" was irrelevant to the issues before the jury. *Solvay S.A. v. Honeywell Int'l., Inc.*, 622 F.3d 1367, 1379 (Fed. Cir. 2010) ("An infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the

8

device accused of infringing") (*citing Markman v. Westview Instruments*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370 (1996)).

The term "payment from . . ." does not have the temporal requirement that Jingle artificially imported. In other words, "<u>payment from</u> the businesses identified by a search to the directory assistance provider" does not suggest that payment must occur at a specific time, contrary to Dr. Guerin's testimony that payment must occur before a business is listed. As Mr. Jones explained, "payment from" as properly understood means that payment may occur at anytime in the course of business. *See* Dec. 3, 2010, Trial Tr. at 333:12-34:3.

Dr. Guerin also testified that claim 4 requires each listed business to pay the directory assistance provider. *See* Dec. 7, 2010, Trial Tr. at 828:23-829:9; *see also* 791:12-793:20. As Mr. Jones explained, claims 5 and 7, which depend from claim 4, specifically contemplate the inclusion of non-paying businesses:

> 5. The method of claim 4, wherein businesses which provide the desired product or service and have given said at least compensation to the directory assistance provider will be suggested to the caller before businesses which provide the desired product or service and have not given said at least compensation to the directory assistance provider.
>
> 7. The method of claim 4, wherein businesses which have given said at least compensation to the directory assistance provider are listed before businesses which have not given said at least compensation to the directory assistance provider.

'371 Patent, Cl. 5 & 7 (emphasis added); Dec. 3, 2010, Trial Tr. at 335:15:-337:9. Dr. Guerin's testimony therefore was plainly inconsistent with the language of the asserted claims, as claims 5 and 7 specifically discuss the non-paying businesses. *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1333-34 (Fed. Cir. 2010) ("Under the doctrine of claim differentiation, dependent claims are presumed to be of narrower scope than the independent claims from which they depend.") (*citing AK Steel Corp. v. Sollac & Ugine,* 344 F.3d 1234, 1242 (Fed. Cir. 2003).

9

Jingle failed to present competent evidence to rebut Grape's overwhelming evidence of infringement. Accordingly, the jury's verdict was against the clear weight of the evidence, and therefore the Court should, in its discretion, order a new trial on the issue of infringement of the '371 patent.

### III.   CONCLUSION

For the foregoing reasons, Grape respectfully requests that the Court grant a new trial on the issue of infringement of the '371 patent pursuant to Rule 59 of the Federal Rules of Civil Procedure.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

———————————————————
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Nicholas Groombridge
Michael Eisenberg
Alfredo A. Perez de Alejo
WEIL, GOTSHAL
    & MANGES LLP
767 Fifth Avenue
New York, NY  10153
(212) 310-8000

January 28, 2011
4063024

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GRAPE TECHNOLOGY GROUP, INC., and KGB USA, INC., | ) ) ) |
| Plaintiffs, | ) ) ) C.A. No. 08-408 (GMS) |
| v. | ) ) |
| JINGLE NETWORKS, INC., | ) ) |
| Defendant. | ) |

## **[PROPOSED] ORDER**

WHEREAS, the Court has carefully considered the parties papers, evidence, and argument; and pursuant to Fed. R. Civ. P. 59;

IT IS HEREBY ORDERED that the Plaintiffs' motion for a new trial on the issue of infringement of U.S. Patent No. 6,775,371 is GRANTED.

Dated: _____      _____
                                                            U.S.D.J.

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2011, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

>Mary Matterer, Esquire
>Morris James LLP

I further certify that I caused copies of the foregoing document to be served on January 28, 2011, upon the following in the manner indicated:

| | |
|---|---|
| Mary Matterer, Esquire<br>Morris James LLP<br>500 Delaware Avenue, Suite 1500<br>P.O. Box 2306<br>Wilmington, DE  19899-2306 | *VIA ELECTRONIC MAIL* |
| Mark F. Evens, Esquire<br>Robert E. Sokohl, Esquire<br>Michael D. Specht, Esquire<br>Lori A. Gordon, Esquire<br>STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.<br>1100 North York Avenue, N.W., Suite 800<br>Washington, DC  20005-3934 | *VIA ELECTRONIC MAIL* |

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)