IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GRAPE TECHNOLOGY GROUP, INC.          )
and KGB, INC.,                         )
                                       )
              Plaintiffs,              )
                                       )
       v.                              )          Civ. A. No. 08-408 (GMS)
                                       )
JINGLE NETWORKS, INC.,                 )
                                       )
              Defendant.               )

## **MEMORANDUM**

## I.     **INTRODUCTION**

In this patent infringement action, plaintiffs Grape Technology Group, Inc. and KGP, Inc.

(collectively, "Grape") allege that the advertiser-supported directory assistance service provided

by Jingle Networks, Inc. ("Jingle") infringes the asserted claims of the patents-in-suit.[1] (D.I. 1.)

The court held a six-day jury trial in this matter on December 3 through December 9, 2010. (D.I.

175.) At trial, Jingle properly moved for judgment as a matter of law ("JMOL") on a number of

grounds pursuant to Rule 50(a) of the Federal Rules of Civil Procedure (D.I. 171.), and the court

denied that motion.[2]

On December 9, 2010, the jury returned a unanimous verdict in favor of Jingle on the

issue of infringement with respect to all claims. (See D.I. 175 at 2.) The jury further found that

all of the asserted claims were not invalid (Id. at 3.) The court entered judgment on the verdict

---

[1] The patents-in-suit are U.S. Patent Nos. 6,775,371 (the "'371 Patent") and 7,023,969 (the "'969 Patent"). The patents-in-suit are owned by Grape and exclusively licensed to kgb USA.
[2] Jingle's JMOL motion was denied by oral Order during the trial on December 6, 2010.

on December 17, 2010. (D.I. 178.) Presently before the court are the parties' post-trial motions.[3] Having considered the entire record in this case, the substantial evidence in the record, the parties' post-trial submissions, and the applicable law, the court will deny all the parties' post-trial motions. The court's reasoning follows.

## II. BACKGROUND OF THE TECHONOLOGY

The patents-in-suit relate to the field of telephone directory assistance services. The '371 patent is entitled "Technique For Effectively Providing Concierge-Like Services In A Directory Assistance System." The inventions disclosed in the '371 patent include a directory assistance service that provides search functionality based on the types of goods and services sought by a caller. (See, e.g., '371 patent at 12:10-19) ("the databases provide the capability to search not just by name and address, but also by type of goods/services .... For example, the preferred database can answer queries soliciting the names/numbers of Chinese restaurants on a given street."). In addition, the disclosed search results can be provided as a list of names in an order that depends on the compensation from listed businesses to the service provider. (See '371 patent at 12:41-42.)

The '969 patent is entitled "Communication Assistance System and Method," and discloses improvements to information assistance systems. One of the features disclosed in the patent permits the system to provide useful information to the user during the "closing period," which is "the period between the time the requested information is retrieved by a customer service representative and the time the requester receives the requested information." (See '969 patent at 2:8-10.) This information is known as a "closing prompt message," and may include, for example, third party advertising. (See '969 patent at 20:48-52.)

---

[3] These motions are Jingle's motion for attorneys' fees pursuant to 35 U.S.C. § 285 (D.I. 181); Jingle's renewed JMOL motion (D.I. 183); and Grape's motion for a new trial (D.I. 182).

2

## III. STANDARD OF REVIEW

Jingle asserts that is entitled to judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. Grape argues that a new trial is warranted under Rule 59 of the Federal Rule of Civil Procedure. Jingle also claims it is entitled to attorneys' fees and costs.

### A. Renewed JMOL Motions

To prevail on a renewed motion for judgment as a matter of law following a jury trial and verdict, the moving party "'must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings.'" *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (quoting *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984)). "Substantial evidence" is defined as "such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." *Perkin-Elmer Corp.*, 732 F.2d at 893.

The court should only grant the motion "if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993) (citing *Wittekamp v. Gulf Western Inc.*, 991 F.2d 1137, 1141 (3d Cir. 1993)). "In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Lightning Lube*, 4 F.3d at 1166 (citing *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 190 (3d Cir. 1992)). Rather, the court must resolve all conflicts of evidence in favor of the non-movant. *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991); *Perkin-Elmer Corp.*, 732 F.2d at 893.

3

"The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Lightning Lube*, 4 F.3d at 1166 (quoting *Patzig v. O'Neil*, 577 F.2d 841, 846 (3d Cir. 1978)). In conducting such an analysis, "the court may not determine the credibility of the witnesses nor 'substitute its choice for that of the jury between conflicting elements of the evidence.'" *Syngenta Seeds, Inc. v. Monsanto Co.*, 409 F. Supp. 2d 536, 539 (D. Del. 2005) (quoting *Perkin-Elmer Corp.*, 732 F.2d at 893).

## B. New Trial

Pursuant to Federal Rule of Civil Procedure 59, a court may grant a new trial "for any of the reasons for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The decision to grant or deny a new trial is within the sound discretion of the trial court. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980). In making this determination, the trial judge should consider the overall setting of the trial, the character of the evidence, and the complexity or simplicity of the legal principles which the jury had to apply to the facts. *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 89 (3d Cir. 1960). Unlike the standard for determining judgment as a matter of law, the court need not view the evidence in the light most favorable to the verdict winner. *Allied Chem. Corp.*, 449 U.S. at 36. A court should grant a new trial in a jury case, however, only if "the verdict was against the weight of the evidence . . . [and] a miscarriage of justice would result if the verdict were to stand." *Williamson v. Conrail*, 926 F.2d 1344, 1352 (3d Cir. 1991).

## C. Attorneys' Fees

In deciding whether to award attorney's fees, the court must undertake a two-step inquiry. *Interspiro USA, Inc. v. Figgie Intern. Inc.*, 18 F.3d 927, 933 (Fed. Cir. 1994). First, the

court "must determine whether there is clear and convincing evidence that the case is 'exceptional.'" *Id.* (quotation omitted). Second, the court must determine whether "an award of attorney fees to the prevailing party is warranted." *Id.* Exceptional cases include: "inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement." *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002) (citation omitted).

## IV. DISCUSSION

### A. Infringement

Grape moves for a new trial on infringement. At trial, Grape asserted four claims of the '371 patent (claims 4, 5, 7, and 8) against Jingle. (D.I. 190 at 3.) Of the four asserted claims, claim 4 is the only independent claim asserted. (Id.) Claim 4 recites:

A method for providing a directory assistance service by a directory assistance provider comprising:

[a] receiving a directory assistance call from a caller, the call including a request for suggestions of businesses which provide a desired product or service;

[b] searching a database;

[c] obtaining a list of selected businesses responsive to the request, wherein the selected businesses are ordered as a function of at least compensation given to the directory assistance provider by the selected businesses;

[d] and suggesting at least one of the selected businesses to the caller.
(D.I. 190 at 3.)

The dispute over infringement centered on whether Jingle's accused service meets all of the limitations imposed by element "[c]". (Id.) Grape contends that Jingle failed to present competent evidence to rebut Grape's evidence of infringement. Therefore, according to Grape, the jury's verdict was against the clear weight of the evidence, and a new trial is in order on the issue of infringement of the '371 patent.

5

## 1. Payment in Advance

In its motion, Grape asserts that Jingle "failed to present competent evidence to rebut Grape's evidence of infringement." (D.I. 185, at 7.) Grape claims that it presented "overwhelming evidence" at trial that claim 4 of the '371 Patent does not require advance payment from listed businesses. (D.I. 192 at 3.) Grape asserts that claim 4 is silent as to when payment must occur. (Id.) Claim 4 states that "the selected businesses are ordered as a function of at least compensation given to the directory assistance provider by the selected businesses." (D.I. 172 at 20.) Grape asserts that this language does not have a temporal limitation, and that any such limitation considered by the jury was improperly suggested by Jingle. (D.I. 192 at 3-4.)

Jingle, for its part, contends that the testimony of its expert, Dr. Roch Guerin supports its assertion that claim 4 contains an explicit limitation that the businesses pay for services in advance. (D.I. 190 at 8.) The court agrees. Indeed, even Grape concedes that the court made a comment at sidebar that recognized this limitation, stating, "Let me interrupt, because it's clear to me that what the patent requires is that you pay in advance." (Trial Transcript, "Tr." at 832:10-15.) The court clearly recognized the limitation of advance payment.

Furthermore, Dr. Guerin's specifically testified to the temporal limitation of claim 4. Dr. Guerin stated that the plain and ordinary meaning of the phrase "wherein the selected businesses are ordered as a function of at least compensation given to the directory assistance provider by the selected businesses" means "a set of businesses that you have paid in advance to be listed by the information assistance provider." (Tr. at 787:13-18.) (Emphasis added). Dr. Guerin elaborated:

> So again, my perception is nothing really fancy at work here. It means a set of businesses that you have paid in advance to be listed by the information assistance provider. (Tr. at 787:8-18.)

6

So really what it is, is it's a list of selected businesses. You have a list of
businesses that have paid, that have given compensation to be listed. And so all
of those businesses have paid the information assistance service in order to be
listed. (Tr. at 788:19-21.)

Dr. Guerin's testimony that payment must occur before a business is listed
is logical: if the businesses are listed in the order determined by the amount that each has paid,
then surely payment must precede this ordering. Dr. Guerin's testimony provides support for the
jury's finding, which was not against the weight of the evidence.

## 2. Non-paying Businesses

Grape also contends that a new trial is warranted because it presented overwhelming
evidence that claim 4 allows non-paying businesses to be listed. (D.I. 185 at 9.) Grape argues
that Dr. Guerin's testimony that claim 4 requires each listed business to pay the directory
assistance provider is inconsistent with the language of the asserted claims.[4] (Id.) Grape states
that under the doctrine of claim differentiation, dependant claims are presumed to be of narrower
scope that the independent claims from which they depend. *Enzo Biochem, Inc. v. Applera
Corp.*, 599 F.3d 1325, 1333-34 (Fed. Cir. 2010) (citing *AK Steel Corp. v. Sollac & Ugine*, 344
F.3d 1234, 1242 (Fed. Cir. 2003)). Therefore, claims 5 and 7 are presumed to be of narrower
scope than claim 4, which requires all listed businesses to pay at least compensation.

---

[4] Grape argues that claims 5 and 7, which depend from claim 4, specifically contemplate the inclusion of non-paying businesses. Those claims recite:

> 5. The method of claim 4, wherein businesses which provide the desired product or service and have given said at least compensation to the directory assistance provider will be suggested to the caller before businesses which provide the desired product or service and have not given said at least compensation to the directory assistance provider.

> 7. The method of claim 4, wherein businesses which have given said at least compensation to the directory assistance provider are listed before businesses which have not given said at least compensation to the directory assistance provider.

Jingle claims that Grape has misconstrued claims 5 and 7, as those dependant claims do not discuss "*non-paying* businesses." (D.I. 190 at 7.) According to Jingle, claims 5 and 7 add limitations regarding businesses that "have not given *at least compensation*." (Id.) Therefore, claims 5 and 7 are not limited to non-paying businesses, but rather encompass businesses that have paid some compensation that does not meet the targeted "least compensation" amount required by claim 4. The court agrees with Jingle. Simply because the dependent claims add limitations to independent claim 4 does not alter claim 4's requirement that all listed businesses provide payment. Jingle's expert, Dr. Guerin, clearly articulated this point at trial:

> **Q**: Sir, doesn't the patent itself not only disclose but actually claim lists that include items for which no payment has been made?
>
> **A**: So if I recall correctly, the patent introduces in one of the dependent claims sort of a second list, which is a list of businesses that have not given compensation. So basically, what it would mean, there is a first list of people who have paid at least \$20. And there is a second list of people who have paid less than \$20.
>
> (Tr. at 830:22-831:5.)

Furthermore, the court does not find any evidence to support Grape's argument that "payment" as discussed in claim 4 can be a "non-payment" or zero. There is little reason to believe that a reasonable jury would have found that "payment" as it appears in claim 4 could actually mean non-payment, especially given Dr. Guerin's testimony on the relationship of the independent and dependent claims. The jury's finding that claim 4 does not accept non-paying businesses to be listed was not against the weight of the evidence.

**B.    Invalidity**

**1.    Anticipation**

8

A claim is anticipated under 35 U.S.C. § 102 "if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference." *Verdegaal Bros., Inc. v. Union Oil Co. of Cal.*, 814 F.2d 628, 631 (Fed. Cir. 1987).

### a.     The '371 Patent

At trial, Jingle argued that the asserted claims of the '371 patent were anticipated by U.S. Patent No. 6,526,135 issued to Paxson ("Paxson"). Jingle now submits that it is entitled to judgment as a matter of law that the asserted claims of the '371 patent are invalid over Paxson. (D.I. 186 at 2.) Jingle claims that it provided clear and convincing evidence that Paxson discloses all of the elements of independent claim 4.[5] Jingle asserts that Grape's technical expert, Mr. Lanning, did not contest whether Paxson met the limitations of the preamble of claim 4, or of elements [a] and [b] of claim 4, but took the position that Paxson did not teach the limitations of the final two elements, [c] and [d] of claim 4. (D.I. 186 at 3; Tr. at 870:15-878:15.)

Jingle breaks element [c] into two parts, and claims that Grape admits that the first half, "obtaining a list of selected businesses responsive to the request," is taught by Paxson because Mr. Lanning acknowledged that Paxson "would do a selection of the different [] suppliers it had in the system." (D.I. 186 at 3; Tr. at 872:10-11.) Jingle argues that Mr. Lanning's testimony

---

[5] Only one independent claim of the '371 patent, claim 4, was asserted by Grape. Claim 4 recites:
> A method for providing a directory assistance service by a directory assistance provider comprising:
> [a] receiving a directory assistance call from a caller, the call including a request for suggestions of businesses which provide a desired product or service;
> [b] searching a database;
> [c] obtaining a list of selected businesses responsive to the request, wherein the selected businesses are ordered as a function of at least compensation given to the directory assistance provider by the selected businesses;
> [d] and suggesting at least one of the selected businesses to the caller.

9

means that Paxson creates a "list" or "set of listings" which satisfies the first part of element [c]. (D.I. 186 at 4.)

With regard to the second part of element [c], "wherein the selected businesses are ordered as a function of at least compensation given to the directory assistance provider by the selected businesses," Jingle claims that its technical expert, Dr. Forys, testified that Paxson's assignment of selected businesses to pie shares purchased by the individual businesses was a form of ordering as a function of at least compensation. (DI. 186 at 4; Tr. at 736:5-23.) Therefore, since the court construed the term "ordered as a function of" to have its plain and ordinary meaning, Jingle asserts that the second part of element [c] is also satisfied by Paxson. (D.I. 66 at 2; D.I. 186 at 4.) Further, Jingle contends that Grape's expert, Mr. Lanning, improperly restricted the plain and ordinary meaning of this element to ordering the selected businesses in a list format. As a result, argues Jingle, Mr. Lanning's testimony fails to provide substantial evidence that the second part of element [c] is not met by Paxson. (D.I. 186 at 4.)

Jingle points out that Dr. Forys testified that reading the name of a business to a caller in Paxson satisfies the "suggesting at least one of the selected businesses to the caller" element of the claim. (D.I. 186 at 4; Tr. at 736:24-737:9.) According to Jingle, Mr. Lanning incorrectly placed two limitations on element [d]: that the caller must be provided a list of suggestions, and that the caller must have a choice in the selection. (D.I. 186 at 4-5; Tr. at 874:15-876:7.) As a result, Jingle asserts that Grape failed to provide substantial evidence that the final element [d] is not met by Paxson. Additionally, Jingle argues that dependent claims 5, 7, and 8 were also anticipated. (D.I. 186 at 4.)

Grape questions whether Paxson discloses "obtaining a list of selected businesses" because "a set of listings is a 'list' under the plain and ordinary meaning of that term." (D.I. 191

10

at 3; D.I. 186 at 3-4.) Grape contends that Jingle never made this argument at trial and is thus precluded from making it now. Furthermore, Grape argues that even if a set of businesses is a "list," Jingle failed to provide any evidence, let alone clear and convincing evidence, that Paxson obtains more than one business to compile such a list. (D.I. 191 at 4.)

The court agrees. Initially, Jingle's argument that since the Paxson system does not contain non-paying businesses, paying businesses by definition are listed/suggested first, was never presented to the jury. Nevertheless, the court will address this argument. Dr. Forys cited two disclosures from Paxson as evidence that it discloses "obtaining a list of selected businesses." (See Tr. at 735:22-736:3.) First, he testified that Paxson discloses "search[ing] the [BDSB] database for candidate business listings, plural, so [Paxson] selects a number of them." (Tr. at 735:25-736:3; Paxson 4:38-40). But Paxson does not say that it "selects a number of [businesses]," but instead states that it selects "a single business listing." (D.I. 191, Ex. A at 93.) Paxson states, "The ACPS 14/CCP searches the BSDB for candidate business listings, invokes the CDP to select a *single business listing*, and returns the results to the AS 18." (D.I. 191, Ex. A at 93) (quoting Paxson 4:38-40) (emphasis added). Further, Mr. Lanning testified that "[Paxson] doesn't create a list, it randomly chooses based on the number of choices that are there." (Tr. at 874:11-12.) Second, Dr. Forys testified that Paxson's Fig. 4, a pie-chart showing call distributions shares, discloses "a list of selected businesses." (Tr. at 736:19-23.) However, Fig. 4 does not show that Paxson "obtains a list of selected businesses," but rather illustrates the distribution of call shares to different companies. In other words, simply because Paxson suggests different companies to callers does not mean that it "obtains a list of selected businesses." Given the fact that the Paxson specification explicitly says that it selects "a single

11

business," Mr. Lanning's testimony provided a reasonable basis for the jury's finding that Paxson did not anticipate the asserted claims of the '371 patent.

Since Paxson fails to disclose "obtaining a list of selected businesses," it cannot disclose "order[ing] [the list of selected businesses] as a function of at least compensation," the second part of element [c]. Put simply, because Paxson does not create a list, it cannot order that list. Paxson, as Mr. Lanning testified, does not order selected businesses, but rather selects a single business using a "pseudorandom call distribution process." (Tr. at 873:19-874:14.)

Regarding element [d], Grape disputes Jingle's contention that no reasonable jury could have found that "suggesting at least one . . . business" is different than providing a caller with a selected business. (D.I. 191 at 8.) The court agrees with Grape. Dr. Forys testified that "telling the caller" that "the [X] Cab Company . . . has been selected" meets the "suggesting" limitation of claim 4. (See Trial Tr. at 737:4-9) (citing Paxson at 8:26-47). However, Mr. Lanning, in rebuttal, explained that telling and "suggesting," in the context of the '371 Patent are not the same:

> [Paxson] is just telling you . . . its result . . . if you had a bad
> experience with Garbo, and you got Garbo again and said, man, I don't want to do
> Garbo anymore, your only choice would be to hang [up] and redial and hope that
> the Paxson system threw the dart at a different place and didn't hit Garbo. But if
> Garbo gets it again, you are going to get Garbo again.
> (Tr. at 875:23-876:7.)

Both the claim language and plain meaning of the word "suggesting" support Mr. Lanning's testimony. (*See* D.I. 191, Ex. B, http://thesaurus.com/browse/suggest (listing "declare," "demand," "order," and "tell" as antonyms of suggest); see also Ex. C, 1999 Merriam Webster's dictionary (defining "suggest" as "to seek to influence;" "to mention or imply as a possibility;" "to propose as desirable or fitting;" "to offer for consideration")). Accordingly,

12

there was substantial evidence, to support the jury's finding that suggesting a business is different

from providing one pre-selected business.

Additionally, the court finds no merit in Jingle's argument that it provided clear and

convincing evidence that Paxson discloses all the elements of the dependent claims 5, 7, and 8.

In making this argument, Jingle presents claims that it never presented to the jury, and submits

arguments that contradict its own trial experts[6]. Moreover, under Jingle's suggested reading of

claims 5 and 7, those claims are rendered superfluous, as they have the same scope as claim 4.

*See Comark Commc'ns. Inc., v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) ("[T]he

doctrine of claim differentiation . . . create[s] a presumption that each claim in a patent has a

different scope.").

## b. The '969 Patent

Jingle submits that it is entitled to judgment as a matter of law that the asserted claims of

the '969 patent are invalid as anticipated by U.S. Patent No. 5,339,352 issued to Armstrong, et al.

("Armstrong"). Only one independent claim of the '969 patent, claim 1, was asserted by

Plaintiffs. Claim 1 of the '969 patent recites:

[PREAMBLE] A communication assistance system for providing
access to information corresponding to a plurality of subscribers, the system
comprising:
[a] a telephone switch for receiving calls from a plurality of requesters
desiring to access said information corresponding to subscribers;
[b] a first database configured to store said information corresponding
to each of said subscribers, including phone numbers of each of said
subscribers;
[c] a closing prompt module coupled to said first database so as to
select a closing prompt code from a plurality of available closing prompt
codes each of said closing prompt codes associated with a desired closing
prompt message so as to provide a selected closing prompt message,

---

[6] Dr. Forys testified that those businesses which pay are suggested before those businesses that do not. (Tr. at 739:6-740:6.)

13

wherein anyone of the available closing prompt messages is provided to a requester
[d] wherein said closing prompt module selects said closing prompt code, from any one of said available closing prompt codes, relating to a subscriber information other than the subscriber information requested by said requester.
(D.I. 186 at 9.)

Jingle claims that Grape's expert, Mr. Lanning, did not dispute that Armstrong discloses the preamble and elements [a]-[c], but testified that the last limitation of claim 1 was not satisfied by Armstrong because the cellular telephone companies are not subscribers and Armstrong does not provide "targeted third-party advertising." (Id; Tr. at 853:20-855:2.) Jingle submits that Mr. Lanning's testimony is based on an erroneous interpretation of the meaning of element [d]. (D.I. 186 at 10.) The court construed the term "subscriber" to mean "any individual or business entry whose information is stored for retrieval by the communication assistance system." (D.I. 66 at 3.) According to Jingle, Mr. Lanning admitted in his testimony that cellular telephone companies such as Sprint, AT&T, and Verizon were users of the directory assistance system disclosed by Armstrong and that these cellular telephone companies had announcements stored for retrieval by Armstrong's directory assistance system. (D.I.186 at 10; *see* Tr. at 851:14-852:11.) Further, Jingle submits that Mr. Lanning's narrow view of what businesses are within the definition of a "subscriber" is at odds with the court's broad construction of that term. (Id. at 11.) Additionally, Jingle claims that Mr. Lanning misconstrues the term "targeted third party advertisement," which it posits is not a limitation of claim 1.[7] (Id.) Dr. Forys testified that the messages played for the subscriber cellular telephone companies in Armstrong meet this limitation. (Id; Tr. at 705:13-706:12.) Therefore, Jingle submits that the evidence it presented

---

[7] Jingle argues that, "The claim element does not require that the closing prompt message be targeted for the calling party. The claim element only requires that the message delivered to the caller be related to a subscriber different than the subscriber whose information was requested in the directory assistance call." (D.I. 186 at 11.)

14

established by clear and convincing evidence that element [d] of claim 1 is satisfied by Armstrong. (D.I. 186 at 11.)

Grape contends that the jury's verdict that Armstrong does not anticipate the '969 patent should stand. The court agrees. Grape argues that Dr. Forys relied on a single example from Armstrong as evidence that it discloses the limitation "closing prompt message . . . relating to a subscriber information other than the subscriber information requested by said requester."[8] This example, Grape points out, is identical to the prior art system disclosed in the '969 patent's Background Section, and upon which the '969 patent directly sought to improve.[9] (D.I. 191 at 15.) Indeed, Mr. Lanning testified, "You have to look at the time frame that these patents are filed. And for this patent, we're looking at the 2000 time frame, the year 2000. So you look at the situation. The legal people say what was the state of the art? What things were happening in the 2000 time frame?"[10] (Tr. at 853:8-13.) Mr. Lanning testified that a "service provider" in this context, is a "cellular carrier." (Tr. at 853:14-15.) Since the '969 patent discloses this element of Armstrong, and because that fact was testified to by Mr. Lanning, Jingle's argument that no reasonable jury could find that Armstrong does not anticipate the '969 patent is without merit. Furthermore, the court does not find that Mr. Lanning misconstrued element [d]. As Mr. Lanning explained, a person of skill in the art would understand the plain meaning of the term "relating to a subscriber information other than the subscriber information requested by said

---

[8] The example Dr. Forys gave was "[An] OSS switch [that] can be programmed to instruct the audio subsystem 27 to play specific announcements on a trunk group basis. For example, the message structure could provide a new field for identifying the carrier, to allow provision of a message customized for each cellular carrier." (Tr. at 706:9-14; citing Armstrong at 13:20-25.)

[9] The Background Section states, "Another drawback to current telephone assistance systems is the failure to utilize meaningfully the period between the time the requested information is retrieved by a customer service representative and the time the requester receives the requested information. This period is referred to as the closing period where the directory assistance service provides a closing prompt to the requester. Typically, this closing prompt is a single recorded message such as the familiar "We are connecting you to NPA.nxx.xxxx. Thank you for using XYZ" where XYZ is the name of the service provider of the requester." ('969 Patent at 2:6-17; Tr. at 853:7-19).

[10] The Armstrong patent was published in 1994. (Armstrong, at 1.)

15

requestor," in the context of this patent, to require targeting the "closing prompt message" to a caller's request. (See Tr. at 843:23-845:18.) "[C]laims 'must be read in view of the specification, of which they are a part.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2006) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995)). The '969 patent specification states, "[T]he present invention is able to produce a closing prompt targeted to a requester . . . This feature works to tailor the closing prompt to a particular caller, increasing the advertising and related promotional revenue capacity of the closing prompt feature." ('969 Patent at 4:37-59.) Mr. Lanning also testified that there is a significant difference between the "subscriber" and the cellular carrier. (See Tr. at 852:17-23) ("Well, the subscriber, that is you and me that have our phones, if we have a phone, we're a subscriber or a customer. So this message on top isn't dealing with a subscriber or a customer, it's dealing with the cellular telephone company.") Given Mr. Lanning's testimony, and the construction of the claims in light of the patent as a whole, the jury's finding was not against the weight of the evidence.

## 2. Obviousness

Under 35 U.S.C. § 103, a patent may not be obtained on subject matter that "would have been obvious at the time the invention was made to a person having ordinary skill in the art." The framework for determining obviousness involves three factual inquiries: (1) ascertaining the differences between the claimed invention and the prior art; (2) ascertaining the differences between the claimed invention and the claims at issue; and (3) resolving the level of ordinary skill in the art. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966). "Obviousness is a question of law based on underlying findings of fact. *In re Kubin*, 561 F.3d 1351, 1355 (Fed. Cir. 2009).

To determine whether an invention is patentable over the prior art, "a court must ask whether the improvement is more than the predictable use of prior elements according to their

16

established functions." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417, 419 (2007). "Granting patent protection to advances that would occur in the ordinary course without real innovation retards progress . . . ." *Id.*

### a. The '371 Patent

Jingle claims it is entitled to judgment as a matter of law that the asserted claims of the '371 patent are invalid for obviousness under 35 U.S.C. § 103 over U.S. Patent No. 5,689,547 issued to Molne ("Molne") in combination with U.S. Patent No. 6,078,866 issued to Buck, *et al.* ("Buck"). Jingle contends that Grape failed to provide any evidence that the preamble and elements [a] and [b] of claim 4 are not met by Molne. (D.I. 186 at 6; see also Tr. at 880:15-881:3.) Jingle further submits that Grape did not dispute that Buck discloses the limitations of elements [c] and [d] of claim 4, but instead argued that it would not have been obvious to one of skill in the art to combine Buck with Molne. (D.I. 186 at 7; Tr. at 740:18-743:14.) Dr. Forys also testified that Buck disclosed ordering an Internet search result list according to the amount of money paid in advance by the parties. (Tr. 743:5-744:22.) Therefore, according to Jingle, the combination of these two patents is simply the ordering Internet technology disclosed in Buck with an existing electronic process, as recited in Molne. (D.I. 186 at 7.)

Jingle claims that Dr. Forys testified that Molne disclosed all the limitations of claim 4, except the second part of element [c], i.e., how the list of results is ordered. (Id.) Jingle submits that, based on the Supreme Court's reasoning in *KSR*, the Federal Circuit has subsequently held that applying computer and internet technology to replace older electronics has been commonplace in recent years. *See Muniauction Inc. v. Thomson Corp.*, 532 F.3d 1318, 1327 (Fed. Cir. 2008). Jingle argues that the combination of Molne and Buck merely applies Internet technology to existing electronic processes, and therefore would have been obvious to a person

17

of skill in the art.[11] (D.I. 186 at 7.) Additionally, Jingle contends that because Mr. Lanning's testimony is insufficient to support the verdict for claim 4, it is also insufficient to support the verdict of nonobviousness for claims 5, 7, and 8. (Id. at 9.)

Grape disputes Jingle's assertion that the combination of Molne and Buck render the '371 patent obvious for two reasons: Jingle failed to provide evidence of the level of ordinary skill in the art as required by *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966); and substantial evidence supports the jury's finding of nonobviousness. The court agrees with both of Grape's contentions. First, Grape is correct, Jingle failed to provide any evidence of the level of ordinary skill in the art, a factual inquiry that must be resolved to determine obviousness. *See KSR*, 550 U.S. at 406; *see also supra*, note 11. The court finds Jingle's reliance on *Chore-Time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774, 779 (Fed. Cir. 1983), to be unpersuasive. In *Chore-Time*, the Federal Circuit found no error in the District Judge's "determination that because the subject matter of the patent and prior art were *in this case* so easily understandable, a factual determination of the level of skill in the art was unnecessary." 713 F.2d at 779 (emphasis added). The prior art in *Chore-Time* related to bird feeders and the District Court found the level of skill was "a level of skill as that of the ordinary layman of average intelligence." *Id.* at 779 n.2. (internal quotations omitted). Here, the asserted prior art relates to far more complex science: call distribution systems; cellular radiotelephone systems; Internet site searching technologies; and other technologies beyond the grasp of most laypersons. As a result, Jingle

---

[11] Jingle states that its expert, Dr. Forys referenced a person "in the industry" when discussing the prior art, and that that testimony is sufficient evidence to establish the level of ordinary skill in the art. (D.I. 186 at 7.) The court does not agree. Dr. Forys's brief, and unsupported, "reference" of a person in the industry hardly creates any evidence that the ordinary level of skill in the art is "an individual working in the telecommunications industry," as Jingle claims. (Id.) In fact, Jingle cites "Trial Tr. at 7-18" as the part of the transcript where Dr. Forys makes this reference, but Dr. Forys's testimony does not appear on pages 7-18. Moreover, in his expert report, Dr. Forys inconsistently defined the level of skill in the art as a "B.S. degree in Electrical or Computer Engineering or equivalent training as well as 3-5 years of experience in the fields of call center architecture and their components especially involving directory assistance as well as marketing and advertising." (D.I. 191 at 13, Ex. D at 11-12.) The court agrees with Grape that Jingle failed to provide any evidence of ordinary skill in the art. (D.I. 191 at 11.)

18

was required to present evidence to allow the court to determine the level of skill in the art, and it failed to do so.

Second, substantial evidence supports the jury's finding that it would not have been obvious to one of skill in the art to combine Buck and Molne. Mr. Lanning testified that it would not have been obvious to combine Molne and Buck because each deals with two separate and divergent fields: telephone directory storage, and internet site searching, respectively. (Tr. at 882:5-13.) Further, Mr. Lanning testified that a person of skill in the art would not have a reasonable expectation of combining these sciences at the time of invention. He stated, "So it would not have been obvious at all to connect to the Internet. We were having all kinds of issues just trying to learn how to [talk] over wireless cellular phones systems in the 2000 time frame." (Tr. at 883:10-13.) Furthermore, Jingle admits that Mr. Lanning testified that Molne "does not teach a call to a directory assistance system." (D.I. 186 at 6; Tr. at 880:20.) "The burden falls on the patent challenger to show by clear and convincing evidence that a person of ordinary skill in the art would have had reason to attempt to . . . carry out the claimed process, and would have had a reasonable expectation of success in doing so" *Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1360 (Fed. Cir. 2007). Jingle has not met that burden.

Next, Jingle cites *Muniauction Inc. v. Thomson Corp.,* 532 F.3d 1318, 1327 (Fed. Cir. 2008), in support of its argument that the '371 patent is obvious as a matter of law. (D.I. 186 at 8.) Jingle argues that "the Federal Circuit [in *Muniauction*] . . . held that applying computer and internet technology to replace older electronic has been commonplace in recent years." (*Id.*) However, Grape correctly points out that it is well established that there are no *per se* rules of obviousness. *See In re Ochiai,* 71 F.3d 1565, 1572 (Fed. Cir. 1995) ("[R]eliance on *per se* rules of obviousness is legally incorrect and must cease."). Here, unlike in *Muniauction*, the Internet

reference, does not merely achieve the same goal as the other prior art reference only using Internet technology. 532 F.3d at 1321-23. Rather, as Jingle points out, Buck discloses ordering listings, while Molne does not. (D.I. 186 at 7.) Therefore, the jury's finding is not against the weight of the evidence, and because there was sufficient evidence to support its finding of nonobviousness for claim 4, the jury's finding of nonobvious for claims 5, 7, and 8 are also substantiated.

## b. The '969 patent

Jingle argues that it is entitled to judgment as a matter of law that the asserted claims of the '969 parent are invalid for obviousness under 35 U.S.C. § 103 over U.S. Patent No. 6,269,337 issued to Desmond, *et al.* ("Desmond") and U.S. Patent No. 6,647,257 issued to Owensby ("Owensby"). Jingle claims that it presented clear and convincing evidence at trial that the combination of Desmond and Owensby disclosed each and every element of the asserted claims of the '969 patent. (D.I. 186 at 12; Tr. at 717:5-726:17.) Jingle contends that Grape's expert, Mr. Lanning, did not dispute that the combination of Desmond and Owensby disclosed each and every element of the asserted claims, but rather argued that it would not have been obvious to a person of skill in the art to combine them because "these patents are for very different reasons and address very different problems." (D.I. 186 at 12; Tr. at 861:22-864:22; 864:18-22.)

Jingle claims that Mr. Lanning applied a legally incorrect presumption in coming to this conclusion. (D.I. 186 at 12.) According to Jingle, Mr. Lanning's assumption "that a person of ordinary skill attempting to solve a problem will be led only to those elements of prior art designed to solve the same problem" has been rejected by *KSR*. 550 U.S. at 420-21. Therefore, since Mr. Lanning ignored the Court's holding that "[a] person of ordinary skill is also a person

20

of ordinary creativity, not an automaton," Jingle claims it is entitled to judgment as a matter of law. *Id.*

Furthermore, Jingle claims it presented sufficient evidence that a person of ordinary skill in the art, that is, "a person that knows the telecommunications business," would have combined Desmond and Owensby to achieve the subject matter of claim 1. (D.I. 186 at 13; Tr. at 724:2-726:17.) Dr. Forys testified that Desmond provided an example of a directory assistance call during which "the caller may choose to have the listed party's telephone number be automatically dialed." (Tr. at 725:6-7.) Dr. Forys further explained that Owensby was designed to play a targeted advertisement in a call "prior to connection and/or at predetermined intervals during the transmission of the call." (Tr. at 725:13-726:4.) Jingle claims that Desmond discloses placing a call to the number requested by the calling party in a directory assistance call, and Owensby teaches playing advertisements targeted to a calling party while a call is being connected. (D.I. 186 at 13-14.) Dr. Forys testified that it would have been obvious to a person in the business to combine Desmond and Owensby. (Id. at 14.) Furthermore, Jingle argues that because Mr. Lanning's testimony cannot support the verdict for claim 1, it also fails to support the verdict for claims 5, 20, and 25. (Id.)

Grape disputes Jingle's assertion that it is entitled to judgment as a matter of law that the asserted claims of the '969 patent are invalid for obviousness over Desmond and Owensby. As a preliminary matter, Grape disagrees that Mr. Lanning ever admitted that Desmond and Owensby disclosed each limitation of the asserted claims. (D.I. 191 at 18.) Grape contends that Mr. Lanning testified that the combination of Desmond and Owensby fails to disclose a "closing prompt message" as recited in the claims of the '969 patent. (Id.) However, the trial transcript does not contain this testimony. While Mr. Lanning did testify that Owensby "is not a directory

21

assistance system in any way," he did not testify that the combination of Desmond and Owensby fails to disclose "a closing prompt message." (See Tr. 864:6-7.) Additionally, Mr. Lanning did testify that in his opinion, it would not have been obvious to one skilled in the art to combine these patents because "[they] are for very different reasons and address very different problems." (Tr. at 864:21-22.)

Grape also contends that Jingle did not offer any evidence of the level of ordinary skill in the art, as required by *KSR*, and discussed above. *See* Sec. IV.2.a. The court agrees that Jingle was required to present evidence establishing the level of ordinary skill in the art, and failed to do so. Given Mr. Lanning's testimony and Jingle's failure to establish the level of ordinary skill in the art, the jury's finding was not against the weight of the evidence.

### 3. Attorneys' fees

Jingle asks the court to grant its motion for attorneys' fees, expenses and costs (D.I. 181). The court does not find this case to be exceptional by clear and convincing evidence as required by 35 U.S.C. § 285, and therefore will deny Jingle's motion. In deciding whether to award attorney's fees, the court must undertake a two-step inquiry. *Interspiro USA, Inc. v. Figgie Intern. Inc.*, 18 F.3d 927, 933 (Fed. Cir. 1994). First, the court "must determine whether there is clear and convincing evidence that the case is 'exceptional.'" *Id.* (quotation omitted). Second, the court must determine whether "an award of attorney fees to the prevailing party is warranted." *Id.* Exceptional cases include: "inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement." *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002) (citation omitted).

22

An award of attorney fees under § 285 is not intended to be an "ordinary thing in patent cases," and should be limited to circumstances in which it is necessary to prevent "a gross injustice" or bad faith litigation. *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1329 (Fed. Cir. 2003); *see also Aptix Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369, 1375 (Fed. Cir. 2001) (affirming an award of attorney fees under § 285 for the "extreme litigation misconduct" of falsifying evidence); *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547 (Fed. Cir. 1989) (affirming an award under § 285 following repeated violations of a permanent injunction and a district court finding of a "strategy of vexatious activity").

Grape's conduct in this case does not rise to a level of bad faith or vexatious litigation that warrants an award of attorneys' fees and costs. Though the parties in this case engaged in "hardball" litigation tactics throughout the pendency of this litigation, none of their conduct was "exceptional" in that regard. *See Forest Labs., Inc. v. Ivax Pharms., Inc.*, No. 03-891-JJF, 2008 U.S. Dist. LEXIS 14623, at *6-7, 2008 WL 522296 (D. Del. Feb. 26, 2008) (noting that "hard-fought" litigation does not necessarily constitute "vexatious or bad faith litigation" for purposes of awarding attorney fees under § 285). For the most part, both sides defended their respective positions throughout this litigation in apparent good faith. The court finds, therefore, that none of the parties are entitled to an award for attorneys' fees and costs in this case.

## V.   CONCLUSION

For the reasons stated above, the court will deny all of the outstanding post-trial motions.

Dated: January __9__ , 2012

CHIEF, UNITED STATES DISTRICT JUDGE

23

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GRAPE TECHNOLOGY GROUP, INC. )
and KGB, INC., )
                       )
        Plaintiffs, )
                       )
        v. )        Civ. A. No. 08-408 (GMS)
                       )
JINGLE NETWORKS, INC., )
                       )
        Defendant. )

## ORDER

For the reasons stated in the accompanying memorandum of the same date, IT IS
HEREBY ORDERED that:

1. The plaintiffs' Motion for a New Trial (D.I. 182) is DENIED;

2. the defendant's Motion for Judgment as a Matter of Law (D.I. 183) is DENIED; and

3. the defendant's Motion for Attorneys' Fees, Expenses, and Costs (D.I. 181) is DENIED.

Dated: January ___, 2012

CHIEF, UNITED STATES DISTRICT JUDGE